Arthur Lee **SIMPSON**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–99–00248–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 5, 2000.

---

**326**

Phillip S. Greene, Houston, for appellants.

Daniel P. Bradley, Anahuac, for appellees.

Panel consists of Justices FOWLER, EDELMAN, and BAIRD.*

## MAJORITY OPINION

EDELMAN, Justice.

Arthur Lee Simpson appeals a conviction for possession with intent to deliver over 400 grams of cocaine on the grounds that the trial court erred in denying his

---

* Former Judge Charles F. Baird sitting by assignment.

motion to suppress because: (1) he was detained without reasonable suspicion once the arresting officer had completed his investigation of the initial traffic stop; (2) appellant's consent to search his vehicle was not freely and voluntarily given; and (3) the officer's search inside appellant's spare tire in his trunk exceeded the scope of any consent requested by the officer. We affirm.

## Background

While traveling along Interstate 10 one evening, appellant was stopped by Texas Highway patrolman Pablo Chavez because the light illuminating appellant's rear license plate was burned out. Before concluding this traffic stop, Chavez asked appellant if he could search his vehicle, and appellant nodded his head affirmatively. Inside the spare tire in the trunk of appellant's car, Chavez discovered a duct-taped box containing cocaine. Appellant was indicted for possession with intent to deliver over 400 grams of cocaine. Appellant filed, and the trial court denied, a motion to suppress the evidence found in appellant's car. Appellant entered a guilty plea and was sentenced to seventeen years imprisonment.

## Standard of Review

 In reviewing a trial court's decision on a motion to suppress, we give almost total deference to the trial court's determination of historical facts and mixed questions of law and fact which turn on an evaluation of credibility and demeanor, but we review its application of law, such as on questions of reasonable suspicion and probable cause, *de novo*. *See Ornelas v. United States*, 517 U.S. 690, 697–99, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000). Where, as here, a trial court makes no explicit findings of historical fact, we presume it made findings necessary to support its ruling as long as those implied finds are supported by the

record. *See Carmouche*, 10 S.W.3d at 327–28.

## Existence of Reasonable Suspicion

Appellant's first point of error argues that after Chavez finished investigating the burned out license plate light, detaining appellant further was a violation of his Fourth Amendment rights because Chavez had no reasonable suspicion that appellant was involved in any criminal activity.

 A routine traffic stop is a detention and thus, must be reasonable under the United States and Texas Constitutions. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex.Crim.App.1997). To be reasonable, a traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *Davis*, 947 S.W.2d at 243, 245. During a traffic stop, an officer may demand identification, a valid driver's license, and proof of insurance from the driver, and may also check for outstanding warrants. *See Davis*, 947 S.W.2d at 245 n. 6. However, once the reason for the stop has been satisfied, the stop may not be used as a fishing expedition for unrelated criminal activity. *See Ohio v. Robinette*, 519 U.S. 33, 41, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (Ginsburg, J., concurring); *Davis*, 947 S.W.2d at 243. Rather, any continued detention must be based on articulable facts which, taken together with rational inferences from those facts, would warrant a man of reasonable caution in the belief that a continued detention was justified, *i.e.*, that the detainee was or would soon be engaged in criminal activity. *See Davis*, 947 S.W.2d at 244–45. In other words, once the purpose of the original detention has been effectuated, any continued detention must be supported by some additional reasonable suspicion, that is, something out of the ordinary that is occurring and some indication that the unusual circumstance is related to crime. *See Davis*, 947 S.W.2d at 244–45 (holding that after officers determined that driver

was not intoxicated, continued detention of driver and search of his car without his consent was unreasonable where not supported by reasonable suspicion of other criminal activity).

■■■ To establish reasonable suspicion, an officer must be able to articulate something more than an inchoate and unparticularized suspicion or hunch. *See U.S. v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). However, the fact that an officer does not have in mind the reasons that justify the action does not invalidate the action as long as the circumstances justify it. *See Robinette*, 117 S.Ct. at 420–21. The determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior. *See Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000).

■■■ In *Robinette*, the U.S. Supreme Court held that a continued detention and request to search a detainee's car following a traffic stop was reasonable, where consent was given, even though no circumstances were noted that would have constituted reasonable suspicion of any criminal activity. *See Robinette*, 117 S.Ct. at 420–21. By contrast, in *Davis*, the Court of Criminal Appeals found the officers' conduct unreasonable where, after the detainee refused to consent to a search of his car, the officers nevertheless detained the vehicle and thus its occupants who had no other means to depart. *See Davis*, 947 S.W.2d at 241. We interpret *Davis* and *Robinette* to mean that an officer may request consent to search a vehicle after a traffic stop but may not detain the occupants or vehicle further if such consent is refused unless reasonable suspicion of some criminal activity exists.

■■■ In this case, both Chavez and appellant testified at the suppression hearing, and a video tape of the stop was

played. According to Chavez's testimony, which coincided with the events reflected in the video, he pulled appellant over because appellant's taillamp was burned out.[1] Chavez testified that as he put the patrol car in park, appellant immediately got out of his car, placed his keys in his pocket, and walked toward the patrol car. This raised Chavez's suspicions because his experience had been that people stopped at night are usually "hesitant" to get out of their cars. He thought this behavior indicated that appellant was trying to hide something. Chavez then asked appellant for his driver's license. Appellant pulled the license out of his pocket, gave it to Chavez and then, without request, also gave Chavez his insurance card. Although it is not clearly visible in the video, Chavez testified that appellant was shaking and seemed very nervous, even dropping his insurance card.

Chavez then radioed in appellant's driver's license number to check for outstanding warrants. While awaiting the information on the license check, Chavez questioned appellant about his trip and where he was employed. Chavez testified that appellant's answers were "blurted" out and appellant seemed unsure in his responses. This further raised Chavez's suspicions. Chavez then asked appellant about his arrest history and appellant responded that he had been arrested once for theft. Chavez informed appellant that he was waiting for the information on the license check but that if everything came back clear, Chavez would give appellant a written warning for the defective taillamp. At this point, the counter on the video tape reflected that approximately four minutes had elapsed since appellant had pulled his car over.

Approximately eight minutes after the stop began, Chavez received the license check information. The report indicated

---

1. Failure to have a taillamp illuminating the rear license plate is a traffic violation. *See* TEX.TRANS.CODE ANN. §§ 547.004, 547.322(f) (Vernon 1999). Appellant does not dispute that the initial traffic stop was permissible.

that although appellant's license was valid and he had no outstanding warrants, appellant's criminal record reflected two additional charges, for aggravated battery and aggravated burglary. Chavez testified that this further aroused his suspicion in that appellant was "not telling the truth for some reason." Immediately, Chavez exited his patrol car, approached appellant, and asked him if he had anything illegal in his car such as weapons, drugs, or contraband. Appellant responded that he did not. Chavez then asked if appellant would consent to a search of his car and "everything within the vehicle." Initially, appellant began walking away from Chavez, taking a couple of steps, but Chavez called him back and again asked if appellant would consent to a search of his car. Appellant responded by nodding his head affirmatively. At this point, Chavez had neither written a warning or citation, nor returned appellant's license or insurance card, and the video recorder reflected that approximately nine minutes had elapsed since the stop began.

As noted above, we interpret *Robinette* and *Davis* to allow Chavez to have asked for consent to search appellant's vehicle. However, even if they do not, we believe Chavez had reasonable suspicion to do so based on appellant's: (1) immediate exit of his car upon being stopped and putting his keys in his pocket; (2) abrupt and unsure answers to Chavez's questions; (3) ner-

vousness;[2] and (4) misstatement of his criminal history. The totality of these factors, combined with commonsense inferences about human behavior, suggest that appellant was nervously attempting to direct Chavez's attention away from appellant's car as well as his criminal history. This, in turn, supported a reasonable suspicion that appellant could have illegal items in his car and justified a continued detention.[3] Because appellant's first point of error thus fails to establish that his detention to request a search of his car violated his Fourth Amendment rights, it is overruled.

## Consent

Appellant's second point of error argues that the nod of his head, in response to Chavez's request for consent to search appellant's car, was not sufficient to show that he had freely and voluntarily consented to a search.

 Voluntariness is a question of fact to be determined from all the circumstances. *See Robinette*, 519 U.S. at 40, 117 S.Ct. 417. In order to be voluntary, the consent must not be coerced by covert force, implied threat, or otherwise. *See Carmouche*, 10 S.W.3d at 331. The Texas Constitution requires that the State show by clear and convincing evidence that the consent was freely given. *See id.* The voluntariness of a consent to search in-

---

2. *See Wardlow*, 120 S.Ct. at 676 ("[N]ervous evasive, behavior is a pertinent factor in determining reasonable suspicion").

3. *See generally Powell v. State*, 5 S.W.3d 369, 378–79 (Tex.App.—Texarkana 1999, pet. ref'd) (concluding that appellant's nervousness, conflicting information, prior drug offenses, and lying about previous arrests were sufficient to warrant further detention and a request for consent to search); *Josey v. State*, 981 S.W.2d 831, 837 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd) (finding that reasonable suspicion of drug activity was demonstrated by car being parked in the middle of the road with a bag of money on seat); *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex.App.—Tyler 1996, no pet.) (finding that reasonable suspicion was established where driver gave

vague answers regarding his work as a contractor, knew little about the building industry, was unable to name the members of his crew, could not remember where he bought his car, was nervous, did not make eye contact, and took a lot of time to answer each question); *Bustamante v. State*, 917 S.W.2d 144, 146 (Tex.App.—Waco 1996, no pet.) (finding that reasonable suspicion existed based on nervousness, conflicting statements, and out-of-place screw on side panel of vehicle); *Foster v. State*, 814 S.W.2d 874, 878–79 (Tex.App.—Beaumont 1991, pet. ref'd) (finding reasonable suspicion based on extreme nervousness, discrepancy between insurance date and stated date of purchase of the car, no hang-up clothing on overnight trip, and inconsistent statement of destination).

volves mixed questions of law and fact. *See Stephenson v. State,* 494 S.W.2d 900, 904 (Tex.Crim.App.1973). Therefore, we afford almost total deference to the trial courts' determinations of such questions where they are based on an evaluation of credibility and demeanor and are supported by the record. *See Maldonado v. State,* 998 S.W.2d 239, 247 (Tex.Crim.App. 1999).

In this case, Chavez's testimony and the video tape clearly indicated that appellant nodded affirmatively to Chavez's request to search the car. During his cross-examination at the suppression hearing, appellant testified that when he nods his head up and down it means "yes." However, he stated that when he nodded to Chavez, he was responding to a question previously asked by Chavez, as to whether Chavez could check to see if there was a passenger in the car. Appellant later stated that he had nodded affirmatively because he thought he had no choice in the matter. After further questioning, appellant again stated that his nodding was in response to Chavez's request to look for a passenger.

In light of the conflicting evidence, we must defer to the trial court's implied determination that appellant's reason for nodding was to consent to the search rather than because he thought he had no choice or was responding to a previous question. Accordingly, appellant's second point of error is overruled.

### Scope of the Search

Appellant's third point of error asserts that Chavez's search of appellant's spare tire exceeded the scope of the consent expressly requested by Chavez. Appellant argues that because Chavez's second request for consent referred only to appellant's "vehicle" and did not include the phrase "and everything in it," as used in his first request, an objectively reasonable

1. On cross-examination, Chavez testified that after learning of the two additional arrests, he

person would conclude that the consent pertained only "to the vehicle itself, and not to anything inside of the vehicle."

The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of "objective" reasonableness, *i.e.,* what the typical reasonable person would have understood by the exchange between the officer and the suspect. *See Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). The scope of a search is also defined by its expressed object, and a suspect is free to delimit the scope of the search to which he consents. *See id.* at 251–52, 111 S.Ct. 1801.

Unless an officer's request, or a suspect's consent, limits a search to a particular area of the vehicle, such as the passenger compartment or trunk, we believe that a request for a search "of the car" reasonably includes all areas of the vehicle and excludes none. Moreover, although Chavez's initial request specifically included the phrase "everything in it" and the second request did not, both requests were made in the same context and were so closely connected as to reasonably indicate that the second request was merely an abbreviated version of the first. In addition, because Chavez had asked appellant whether he had any weapons, drugs, or contraband in the vehicle immediately before asking to search the vehicle, the object of the search would be construed by a reasonable person as encompassing any area of the car in which such objects could be concealed. Therefore, we overrule appellant's third point of error and, accordingly, affirm the judgment of the trial court.

CHARLES F. BAIRD, Justice (Assigned), dissenting.

In my mind, this case boils down to whether appellant's continued detention was reasonable after trooper Chavez learned appellant had a more extensive arrest record than initially stated.[1] If the

exited his vehicle, placed appellant's driver's license and proof of insurance on the hood of

continued detention was reasonable, the consent to search the vehicle was valid. However, if the continued detention was unreasonable, the consent was tainted and the trial court erred in failing to suppress the fruits of that search. For the following reasons, I believe the detention was unreasonable.

To determine whether an investigative detention is reasonable under the Fourth Amendment a dual inquiry is made: was the detention justified at its inception; and, if so, was the detention reasonably related in scope to the circumstances that justified the detention. *See Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). In addressing the first prong, the majority states:

> [W]e believe Chavez had reasonable suspicion to do so based on appellant's: (1) immediate exit of his car upon being stopped and putting his keys in his pocket; (2) abrupt and unsure answers to Chavez's questions; (3) nervousness; and (4) misstatement of his criminal history. The totality of these factors, combined with commonsense inferences about human behavior, suggest that appellant was nervously attempting to direct Chavez's attention away from appellant's car as well as his criminal history.

the patrol vehicle and initiated an investigation which was secondary and unrelated to appellant's license plate light.

2. Additionally, Chavez testified: "I advised [appellant] that I was waiting for the returns on his driver's license and if in fact everything came back clear and having a valid driver's license that he was going to receive a written warning for a defective license plate lamp."

3. Chavez admitted that these questions were not relevant to the traffic offense investigation.

4. As the majority notes, appellant's nervousness is not obvious from the video. Nevertheless, the majority cites *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000), for the proposition that nervousness can be a factor in determining reasonable suspicion. *See supra* at 329 n. 2. The *Wardlow* Court held unprovoked flight upon noticing a peace officer could give rise to reasonable suspicion. In so holding, the

This, in turn, supported a reasonable suspicion that appellant could have illegal items in his car and justified a continued detention.

*See supra* at 329.

As noted by the majority, on the video tape, Chavez stated if the license check came back clear, appellant would be issued a warning ticket and would be free to leave. *See supra* at 328.[2] When this statement was made, factors one, two and three had already occurred: appellant had exited his vehicle and placed the keys in his pocket; appellant had already blurted his answers and was unsure in some responses;[3] and appellant had already appeared nervous.[4] Chavez determined these factors were not sufficient to establish reasonable suspicion to detain appellant beyond the traffic investigation because they had been considered by Chavez when he announced that a warning ticket would be issued and the detention would end if the dispatcher did not give Chavez an additional reason to hold appellant. *See supra* at 328. Therefore, the determinative factor for the continued detention was Chavez learning of appellant's arrests for aggravated battery and aggravated burglary.[5]

Court stated: "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." From the use of the phrase "a pertinent factor" the Court treats both nervousness and evasive behavior as a single factor in determining reasonable suspicion. And this court has recognized that "nervousness is not a reasonable grounds for suspicion" *See Munera v. State,* 965 S.W.2d 523, 531 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd), and cases cited therein. Indeed, even Chavez testified that it was common for a motorist to act nervous after being stopped by a peace officer.

5. On cross-examination, the following exchange occurred:

Q. The fact of the matter is, you believe that if somebody has a criminal history that you need to investigate further on that reason alone; isn't that correct?
A. Yes, sir.

For the continued detention to have been reasonable, these arrests must have provided a man of reasonable caution with an articulable reason to believe appellant was or soon would be engaged in criminal activity. *See Davis v. State*, 947 S.W.2d 240, 244–45 (Tex.Crim.App.1997). An articulable reason is required because a detention based upon nothing more than an inchoate and unparticularized suspicion or good faith hunch is unreasonable under the Fourth Amendment. *See Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, *Davis*, 947 S.W.2d at 243 nn. 3 and 4. However, when Chavez was asked why he chose to continue the detention, he was not able to articulate any reason. On direct examination, Chavez simply stated learning of the undisclosed arrests "brought my awareness up a little bit that he's not telling the truth for some reason." This is the closest Chavez came to stating a reason for the continued detention. Clearly, this explanation does not provide an articulable reason to believe appellant was or soon would be engaged in criminal activity, and the "for some reason" portion of the testimony is nothing more than an unparticularized suspicion.

On cross-examination, Chavez was asked why he made inquiry into appellant's criminal history:

Q. And you want to know whether or not there's any warrants?

A. Or criminal history, yes, sir.

Q. Right. Well, why criminal history?

A. To see if this gentleman has been involved in any sort of criminal activity before.

Q. And what you found out was—is that at least he had no criminal history related to drugs, did he?

A. But he had a criminal history.

Q. Well, how would a criminal history give you some reason to believe that there may be contraband in a vehicle?

A. Not necessarily contraband, but something that he's hiding.

Q. The fact of the matter is, you believe that if somebody has a criminal history that you need to investigate further on that reason alone; isn't that correct?

A. Yes, sir.

Q. So, to you is that a sufficient basis to initiate an additional investigation other than just a traffic violation?

A. Yes, sir.

Again, Chavez was unable to articulate any reason to believe appellant was or soon would be engaged in criminal activity.

The fact that an individual has a prior arrest or arrests does not automatically provide reasonable suspicion for detention. Otherwise, every person previously arrested would be subject to detention at the whim of a peace officer. Moreover, our law provides that the fact that someone has been arrested, without more, does not give rise to any suspicion whatsoever. Even those who have been arrested and later formally charged with a criminal offense are presumed innocent. *See* TEX. CODE CRIM.PROC.ANN. art. 38.03; *In re Winship*, 397 U.S. 358, 363, 90 S.Ct. 1068, 1076–77, 25 L.Ed.2d 368 (1970).[6] Furthermore, the record does not reveal when appellant was arrested for these alleged offenses, if he was subsequently charged or ever tried for these alleged offenses. For all Chavez knew, the arrests occurred many years ago and appellant simply forgot about them, the charges might have been dismissed following the arrests, or appellant might have been acquitted. However, Chavez did know there were no warrants for appellant's arrest for any of-

---

Q. So, to you is that a sufficient basis to initiate an additional investigation other than just a traffic violation?
A. Yes, sir.

**6.** In *Davis*, a background check revealed appellant's passenger had an arrest and convic-

tion for a drug offense. However, that played no part in the court's determination of whether there was reasonable suspicion for the continued detention or the automobile in which the passenger was traveling. *See*, 947 S.W.2d at 241.

fense at the time of this continued detention. Because there was no articulable reason to believe appellant was or soon would be engaged in criminal activity the continued detention was unreasonable and, thus, violative of the Fourth Amendment.

This leads me to the second prong of *Terry;* the scope of the detention must be limited otherwise it becomes a "fishing expedition for unrelated criminal activity." *See Ohio v. Robinette,* 519 U.S. 33, 41, 117 S.Ct. 417, 422 136 L.Ed.2d 347 (1996) (Ginsberg, J., concurring). A detention that is not reasonably related in scope to the circumstances that justified the detention is unreasonable and, thus, violative of the Fourth Amendment. *See Davis,* 947 S.W.2d at 243. If the undisclosed arrests were the basis of the continued detention, as Chavez testified, then the scope of the continued detention was limited to an investigation of those arrests and nothing more unless and until something fruitful came from that investigation. However, Chavez never investigated the arrests or the reason for their omission in appellant's account of his arrest history. Instead, upon learning of the additional arrests, Chavez immediately began an investigation of the contents of appellant's vehicle. This began with questioning appellant about whether he had ˙anything illegal in the vehicle. Because the continued detention was not limited in its scope to appellant's undisclosed arrests, it was unreasonable and, thus, violative of the Fourth Amendment.

On a final point, I disagree with the majority's interpretation of *Robinette* for two reasons. *See supra* at 329. First, *Robinette* merely stands for the narrow proposition that the Fourth Amendment does not require a peace officer to notify a driver that he is free to leave before seeking consent to search a vehicle. However, the *Robinette* Court noted that knowledge of the right to refuse the consent was a factor to be considered in determining the voluntariness of the consent. *See also, Carmouche v. State,* 10 S.W.3d 323, 332–33

(Tex.Crim.App.2000) (*Citing Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2059, 36 L.Ed.2d 854 (1973)). In the instant case, Chavez's failure to inform appellant of the right to refuse the search militates against a finding that the consent was voluntary. Second, in *Robinette,* the peace officer issued a verbal warning and returned the defendant's driver's license before seeking consent to search the vehicle. Simply stated, the defendant was free to leave when the consent was requested. However, a much different scenario is presented in the instant case. Here Chavez did not issue a warning ticket as promised and Chavez refused to relinquish control over appellant's driver's license and insurance papers before seeking appellant's consent. Finally, appellant walked away when Chavez requested consent to search the vehicle, but Chavez ordered appellant to return. *See supra* at 329. For these reasons, I do not believe *Robinette* can be read to hold appellant voluntarily consented to the search of his vehicle.

The continued detention of appellant was unreasonable and, thus, violative of the Fourth Amendment. And because the detention was illegal, appellant's subsequent consent to search his vehicle was tainted. Consequently, the trial court erred in denying appellant's motion to suppress the fruits of that search. Accordingly, I would sustain the first and second points of error. Because the majority does not, I respectfully dissent.