NO. 07-03-0053-CR


NO. 07-03-0054-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



DECEMBER 23, 2003



______________________________




JEREMY SHANE HOSKINS, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 252ND DISTRICT COURT OF JEFFERSON COUNTY;



NOS. 83208 & 83209; HONORABLE LARRY GIST, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Pursuant to pleas of guilty following the denial of his motion to suppress evidence,
appellant Jeremy Shane Hoskins was convicted in cause number 83208 of possession of
a controlled substance, and in cause number 83209 of possession of a controlled
substance. Without an agreed recommendation, punishment was assessed at 15 years
confinement. Presenting a sole point of error, appellant asserts the trial court abused its
discretion in denying his motion to suppress evidence. Based upon the rationale
expressed herein, we affirm.

 On September 20, 2002, appellant was stopped for speeding by Mike Mills, a
Beaumont Police Officer working in drug interdiction. When asked for identification,
appellant produced a Louisiana document apparently given instead of a citation and
issued in the name of Luther Wood. While appellant was explaining to Officer Mills that
he was coming from Houston where he had visited friends, Mills's partner noticed what
appeared to be a driver's license in the center console of appellant's vehicle. According
to Mills, at that time appellant became nervous and his lips began to quiver. Mills then
asked appellant for consent to search the vehicle which he gave. A search of the
passenger compartment revealed a driver's license bearing appellant's name and photo. 
Mills proceeded to search under the hood of the vehicle where he discovered duct-taped
bundles inside the front fenders containing large quantities of Valium, Xanax, and Nubain,
all controlled substances. Appellant was arrested and handcuffed. 

 A trial court's ruling on a motion to suppress is reviewed for abuse of discretion. 
Oles v. State, 993 S.W.2d 103, 106 (Tex.Cr.App. 1999). We apply a bifurcated standard
of review giving almost total deference to the court's determination of historical facts and
reviewing de novo its application of the law of search and seizure to those facts. State v.
Ross, 32 S.W.3d 853, 856 (Tex.Cr.App. 2000). The evidence should be viewed in the light
most favorable to the court's ruling. State v. Ballard, 987 S.W.2d 889, 891 (Tex.Cr.App.
1999). In a suppression hearing the trial court is the sole judge of the credibility of the
witnesses and the weight to be given their testimony. Id. at 855. 

 Appellant's sole point contention is abuse of discretion by the trial court in denying
his motion to suppress because (1) there were no articulable facts supporting his detention
after the initial purpose of the stop was complete, and (2) the State failed to prove his
consent to search was voluntary. We disagree. Officer Mills testified that when appellant
was asked about the driver's license in the console of the vehicle, he became nervous,
had quivering lips, and avoided eye contact with him. Nervous, evasive behavior is a
factor to consider in determining reasonable suspicion for a Terry stop. (1) Balentine v.
State, 71 S.W.3d 763, 769 (Tex.Cr.App. 2002) citing Illinois v. Wardlow, 528 U.S. 119,
124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Given the totality of the circumstances,
appellant's behavior and the fact that he was in possession of a Louisiana document
bearing another individual's name constituted articulable facts upon which Mills could have
concluded that appellant was engaged in criminal activity. 

 Officer Mills testified that when he asked appellant for consent to search the
vehicle, appellant replied he had "no problem." Appellant testified that when he gave
consent to search, he assumed only the inside of the vehicle would be subject to search. 
He added that only after the contraband was discovered did he ask the officers to
discontinue the search. 

 Voluntariness to search is a question of fact to be determined from all the
circumstances. Ohio v. Robinette, 519 U.S. 33, 40, 117 S.Ct. 417, 136 L.Ed.2d 347
(1996); Carmouche v. State, 10 S.W.3d 323, 331 (Tex.Cr.App. 2000). When the State
relies on consent to search, the burden is on the prosecution to prove by clear and
convincing evidence that the consent was freely and voluntarily given. Reasor v. State,
12 S.W.3d 813, 818 (Tex.Cr.App. 2000). Further, when the scope of the search is
disputed, it is measured by objective reasonableness, i.e., what the typical reasonable
person would have understood by the exchange between the officer and the suspect. 
Florida v. Jimeno, 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); Simpson
v. State, 29 S.W.3d 324, 329 (Tex.App.-Houston [14th Dist.] 2000, pet. ref'd). Although
both Mills and appellant testified that appellant was not informed he did not have to
consent to the search, such warning is not required nor essential. Meeks v. State, 692
S.W.2d 504, 510 (Tex.Cr.App. 1985). Further, an officer's failure to give such a warning
is only probative on the issue of voluntariness, not determinative. Id. 

 Unless an officer's request or a suspect's consent limits a search to a particular
area of a vehicle, the search reasonably includes all areas of the vehicle and excludes
none. Simpson, 29 S.W.3d at 330. In the instant case, neither Mills's request nor
appellant's consent limited the scope of the search. Appellant mistakenly assumed only
the inside of the vehicle would be searched. Based on the evidence presented at the
hearing, we conclude the State established appellant's consent to the search by clear and
convincing evidence. A search following a legitimate traffic stop carried out with a
suspect's consent is reasonable under the Fourth Amendment. Armendariz v. State, No.
0070-02, 2003 Tex.Cr.App. LEXIS 924, at * 7 (Tex.Cr.App. Dec. 10, 2003). Thus, the trial
court did not abuse its discretion in denying the motion to suppress. Appellant's sole point
of error is overruled.

 Accordingly, the judgments of the trial court are affirmed.

 

 Don H. Reavis

 Justice

 

Do not publish.
1. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).



idence showed they began dating in June
1999. (3) In late October of that year, they learned she was pregnant. She terminated her
relationship with Maiwald in December because of his violent behavior. When T.B.D. was
born on July 2, 2000, Maiwald and his mother came to the hospital to see the baby. The
couple reconciled after the child's birth. Moon explained, "[Maiwald's] mother called me
and we started talking and me and [Maiwald] started talking and we got back together." 
After the reconciliation, Moon said, she and Maiwald were together "off and on for about
a year." Moon said they did not live together during that time, but the evidence
nevertheless does not permit identification of a six-month period during which Maiwald
remained away from T.B.D. prior to the expiration of the year-long reconciliation. 

 At this point the light grows dim on this subject. The evidence concerning Maiwald's
remaining away from T.B.D. after the reconciliation was over but before Maiwald entered
prison is scant and uncertain. Moon's testimony did not directly address that period of
time. While testifying about Maiwald's violence toward her, Moon agreed that his violence
was one of the reasons she could not stay with him, but the testimony was not addressed
to any particular time during their relationship and she did not say that Maiwald stayed
away. Darland's testimony comes closest to addressing the issue. She testified that after
the year-long reconciliation, Maiwald "never came by." Under cross-examination she
acknowledged Maiwald had made a visit. Giving due regard to the fact finder's discretion
to believe or disbelieve statements of witnesses, (4)
 in light of the entire record we
nonetheless find Darland's brief and contradictory statements on the subject an insufficient
basis to support a firm belief or conviction that Maiwald abandoned T.B.D. and remained
away from her for a period of six consecutive months. 

 On appeal Moon quotes language from this court's opinion in In re D.S.A., 113
S.W.3d 567 (Tex.App.-Amarillo 2003, no pet.), in which we cited evidence the appellant
had voluntarily committed acts that resulted in his re-incarceration, as a part of the
evidence supporting termination in a constructive abandonment case under subsection
161.001(1)(N). While a parent's imprisonment can be a factor in abandonment cases, it
is not conclusive. In re B.T., 954 S.W.2d 44, 49 (Tex.App.-San Antonio 1997, pet.
denied). Moreover, Moon acknowledged, under questioning by the ad litem, that Maiwald
had attempted to make contact from prison through correspondence. We conclude
Maiwald's incarceration does not render sufficient the otherwise-insufficient proof of the
remaining away requirement of subsection 161.001(1)(C). Cf. In re B.T., 954 S.W.2d at
49-50 (appellant admitted he made no attempt to contact child during long, identified
periods of time).

 The fourth ground on which termination was based, subsection 161.001(1)(H),
requires proof that the parent "voluntarily, and with knowledge of the pregnancy,
abandoned the mother of the child beginning at a time during her pregnancy . . . ." As
noted, Moon testified she terminated her relationship with Maiwald in December 1999
during her pregnancy with T.B.D. (5) She and her mother both also testified that Darland had
their home telephone number changed to keep Maiwald from contacting them. Asked
about changing the telephone number, Darland said, "That's true because he wouldn't
leave us alone." Elsewhere in their testimony, Moon and Darland gave affirmative
responses to questions asking whether Maiwald abandoned Moon. The more detailed
testimony concerning the circumstances of their separation during the pregnancy, however,
coming from the same witnesses, was to the contrary. (6) Again, in light of the entire record,
we find that a reasonable fact finder could not have disregarded these witnesses' more
definitive testimony on the issue of abandonment during the pregnancy in favor of their
general responses, and find the evidence supporting this element of subsection
161.001(1)(H) factually insufficient. J.F.C., 96 S.W.3d at 266. 

 Concluding that the record does not contain factually sufficient evidence supporting
a finding Maiwald committed the actions described in any of the four subsections alleged,
we sustain his fifth issue. The order terminating Maiwald's parental rights is reversed, and
the cause is remanded for a new trial.



 James T. Campbell

 Justice

1. Appellee Stacey Kay Darland Moon married Chris Moon some two years before
the December 2005 hearing on termination. Although some of the events discussed in this
opinion occurred before her marriage, we refer to her throughout by her married name.
2. Incarceration, of course, does not necessarily equate to an inability to support
one's child. Here, though, all the evidence, and the court's finding, are to the effect that
Maiwald had no ability to support T.B.D. during his incarceration. 
3. It appears that Moon resided at her parent's home throughout her relationship with
Maiwald.
4. In re T.N., 180 S.W.3d 376, 383 (Tex.App.-Amarillo 2005, no pet.).

5. As with the remaining away element of subsection 161.001(1)(C), findings of fact
concerning the abandonment element of this ground are absent from the trial court's
findings of fact and conclusions of law.
6. We do not suggest that Moon and her parents were not justified in taking these
actions. To the contrary, Moon's testimony concerning Maiwald's violence toward her may
well have justified them, but that is not the question before us.