# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00774-CR

**Benito Elizondo-Vasquez, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 426TH JUDICIAL DISTRICT
## NO. 66931, HONORABLE FANCY H. JEZEK, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

In 2010, Officers Kim Wolf and Arlie Bridges of the Troy Police Department initiated a traffic stop and pulled over a car driven by Benito Elizondo-Vasquez. During a search of the car, the officers found over 190 pounds of marijuana in the trunk. Accordingly, Vasquez was arrested and charged with a second-degree felony for possessing between 50 and 2,000 pounds of marijuana. *See* Tex. Health & Safety Code § 481.121(b)(5). After his arrest, Vasquez filed a motion to suppress the evidence obtained from his car, but the district court denied the motion. Ultimately, Vasquez entered into a plea agreement, which ensured that his punishment would not exceed 12 years in prison. *See* Tex. Penal Code § 12.33 (specifying that punishment range for second-degree felony is between 2 and 20 years); *see also Elizondo-Vasquez v. State*, 361 S.W.3d 120, 123 (Tex. App.—Texarkana 2011, no pet.) (reversing Vasquez's plea on grounds that his trial attorney was ineffective and remanding case for further proceedings). Subsequent to Vasquez entering

his plea, the district court imposed a sentence of 12 years' imprisonment and gave Vasquez permission to appeal the ruling on his motion to suppress. We will affirm the district court's judgment of conviction.

**BACKGROUND**

During the suppression hearing, Officers Wolf and Bridges were the only witnesses. In their testimonies, they explained that on the night in question, they decided to initiate a traffic stop after noticing a car being driven without a "license plate light." Further, Wolf stated that he turned on his emergency lights, that he pulled up behind the car being driven by Vasquez, and that he "conducted a full traffic stop" after Vasquez drove off the highway and stopped his vehicle. When describing the stop, Bridges testified that he asked for Vasquez's driver's license but that Vasquez only had a Texas identification card. Bridges also related that he asked Vasquez where he was driving, and Vasquez explained that he and his passenger were driving from deep South Texas to Dallas for work. However, Wolf also explained that he did not see any luggage or tools in the car, which he thought was odd given the purpose of the trip as well as the distance that Vasquez was driving, and both Wolf and Bridges testified that Vasquez was acting very nervous.

In addition, Wolf and Bridges stated that after observing Vasquez's and his passenger's nervous behavior, they asked Vasquez and the passenger to step out of the car. Next, Wolf and Bridges testified that they asked for permission to do a pat-down search for officer safety, that Vasquez consented to the search, and that the search did not reveal any weapons or contraband. Furthermore, Wolf related that after performing the pat-down search, he asked Vasquez for

2

permission to search the vehicle and the trunk and that Vasquez consented to both requests. In his testimony, Bridges explained that he heard Vasquez consent to both searches and that Vasquez continued to appear nervous throughout the search. Further, Bridges testified that at the time of the search, neither Vasquez nor his companion had been handcuffed.

When describing the search of the trunk, Wolf stated that he saw "a large sheet covering a large object" and that when he removed the sheet, he noticed "a large amount of bundles wrapped with plastic wrap." Furthermore, Wolf and Bridges testified that when Wolf asked Vasquez what was in the bundles, Vasquez answered, "Weed." Finally, Wolf stated that he cut one of the bundles open, noticed that the bundle contained what he believed to be marijuana based on his training and experience, and arrested Vasquez.

In the hearing, a video of the traffic stop and subsequent search of the vehicle was admitted and played for the district court. Although the audio portion of the recording was malfunctioning at the time that the video was made, the video shows the events on the day in question. In particular, the video shows that Wolf and Bridges initiated the traffic stop and that the officers approached the vehicle at 10:35 p.m. Moreover, the video chronicles how Vasquez stepped out of the vehicle at 10:36 p.m., how the officers began searching the car at 10:41 p.m., and how the officers opened the trunk and discovered the wrapped bundles at 10:45 p.m. Accordingly, only 6 minutes elapsed from the time that the officers began talking with Vasquez to when the search began and only 4 minutes passed between the time that the officers began the search and when they discovered the containers in the trunk.

**DISCUSSION**

In his sole issue on appeal, Vasquez contends that the district court erred by denying his motion to suppress. In his brief, Vasquez does not contest the propriety of the basis for initiating the traffic stop and instead challenges the propriety of his continued detention. When arguing that the evidence should have been suppressed, Vasquez contends that the investigative stop became impermissible when it was no longer "reasonably related in scope to the circumstances which justified" the traffic stop in the beginning. *See* U.S. Const. amend. IV (protecting against unreasonable searches and seizures). In other words, Vasquez argues that the officers unreasonably broadened the scope of the investigation from a traffic stop to a search of his car. Moreover, although Vasquez acknowledges that the police officers testified that he appeared nervous, he asserts that nervousness alone is not a sufficient basis to escalate a traffic stop. *See Wolf v. State*, 137 S.W.3d 797, 804, 805 (Tex. App.—Waco 2004, no pet.) (explaining that acting nervously when confronted by police officers is not indicative of guilt and reversing ruling denying motion to suppress because "the initial detention was longer than was reasonably necessary to effectuate the purpose of the stop . . . and because the prolonged detention was not supported by reasonable suspicion"). Similarly, Vasquez urges that the officers' suspicions about the absence of luggage or tools could not have justified the continued detention. *See Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997) (explaining that continued detention based on officer's conclusion that defendant "did not appear to be someone who was on a business trip . . . was not based upon articulable facts which, taken together with rational inferences from those facts, would warrant a man of reasonable caution in the belief that continued detention was justified"). Accordingly, Vasquez contends that the evidence leading to his arrest was obtained after an illegal detention and, therefore, should have been suppressed.

4

During a suppression hearing, the trial court is the sole trier of fact and is the exclusive judge of the credibility of the witnesses as well as the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). When reviewing a trial court's ruling on a motion to suppress, appellate courts apply a bifurcated standard of review. *Wilson v. State,* 311 S.W.3d 452, 457-58 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Under that standard, appellate courts give almost total deference to a trial court's determination of historical facts but conduct a de novo review of the court's application of the law to those facts. *Wilson*, 311 S.W.3d at 458; *Carmouche*, 10 S.W.3d at 327. Moreover, appellate courts give almost total deference to a trial court's rulings on mixed questions of law and fact if the resolution of those questions is dependent on an evaluation of the witnesses' demeanor and credibility, *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997), but perform a de novo review of mixed questions of law and fact that are not dependent on an evaluation of demeanor and credibility, *Johnston*, 336 S.W.3d at 657; *see Guzman*, 955 S.W.2d at 89. Furthermore, appellate courts perform a de novo review of all purely legal questions. *Johnston*, 336 S.W.3d at 657; *see Kothe v. State*, 152 S.W.3d 54, 62-63 (Tex. Crim. App. 2004). On appeal, the trial court's ruling will be upheld if it is reasonably supported by the record and is correct under any applicable theory of law, *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009), and will only be reversed if the trial court abused its discretion, *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *see State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005) (explaining that court abuses its discretion if its ruling is unreasonable or arbitrary).

In challenging the length of his investigative detention, Vasquez ignores two crucial factors. First, Vasquez ignores that his continued detention was justified, at least in part, by the fact that Vasquez committed an offense in front of the officers and that the officers had probable cause to arrest and further detain him. As mentioned above, Vasquez was initially pulled over because he did not have a license-plate light. *See* Tex. Transp. Code § 547.322(f) (requiring light to illuminate rear license plate). Moreover, shortly after initiating the stop, the officers concluded that Vasquez had been driving without a driver's license in violation of the Transportation Code when Vasquez was unable to produce a license when asked by the officers. *See id.* § 521.025 (mandating that individuals driving in Texas have in their possession current driver's licenses and display them when asked to by police officer and stating that failure to comply is criminal offense). Accordingly, the officers had probable cause to arrest Vasquez. *See Dew v. State*, 214 S.W.3d 459, 462 (Tex. App.—Eastland 2005, no pet.) (explaining that if officer observes defendant driving without driver's license, he has probable cause to arrest and may search individual incident to arrest and that whether arrest occurs before or after search is irrelevant provided that there is probable cause).

Second, and more importantly, Vasquez ignores the fact that the officers testified that the detention continued because Vasquez consented to a search of his vehicle as well as his trunk. Although the Fourth Amendment does provide protection against searches and seizures, including only brief detentions, that are unreasonable, *see United States v. Mendenhall*, 446 U.S. 544, 551 (1980); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983) (explaining that detentions may not last longer than necessary to effectuate purpose of stop), police officers may approach citizens to ask questions or to request consent for a search even in the absence of probable cause or

reasonable suspicion, *Leach v. State*, 35 S.W.3d 232, 235 (Tex. App.—Austin 2000, no pet.); *see Royer*, 460 U.S. at 497-98; *see also Florida v. Bostick*, 501 U.S. 429, 439 (1991) (providing that Fourth Amendment does not bar voluntary cooperation). Accordingly, "police officers may request consent to search an automobile after the purpose of [a] traffic stop has been accomplished so long as it is reasonable under the circumstances and the police officers have not conveyed 'a message that compliance with their requests is required.'" *Leach*, 35 S.W.3d at 235-36 (quoting *Bostick*, 501 U.S. at 435); *see also Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (stating that if police officer asks for consent to search vehicle after traffic stop has been completed, he may not detain occupants of vehicle if "*consent is refused* unless reasonable suspicion of some criminal activity exists") (emphasis added); *cf. Bostick*, 501 U.S. at 434-35 (explaining "that even when officers have no basis for suspecting a particular individual, they may . . . request consent to search his or her luggage . . . as long as the police do not convey a message that compliance with their requests is required").

Because Vasquez does not address the issue of his consent in his brief, he also does not suggest that his consent was in any way involuntary or that a reasonable person under the circumstances would not have felt free to leave. Further, nothing in the record before this Court demonstrates that Vasquez's consent was involuntary.[1] Moreover, given that the officers had probable cause to arrest Vasquez after observing him commit a traffic violation, that the officers

---

[1] In his brief, Vasquez heavily relies on *Davis v. State*, 947 S.W.2d 240 (Tex. Crim. App. 1997). In that case, the court of criminal appeals explained that a traffic stop must last no longer than necessary to effectuate its purpose and determined that the continued detention in that case was not reasonable. *Id.* at 245, 246. However, unlike this case, in *Davis* the defendant did not give his consent to be searched. *Id.* at 241.

7

testified that Vasquez consented to the search of his vehicle and trunk, and that only 6 minutes elapsed between the time that the officers began talking with Vasquez and when the search commenced, we cannot conclude that the detention was unreasonable or impermissible under the Fourth Amendment. *See Leach*, 35 S.W.3d at 236.

Given the preceding and in light of the standard under which we review rulings on motions to suppress, we cannot conclude that the district court abused its discretion by denying Vasquez's motion to suppress. Accordingly, we overrule Vasquez's sole issue on appeal.

## CONCLUSION

Having overruled Vasquez's sole issue on appeal, we affirm the district court's judgment of conviction.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed: August 20, 2014

Do Not Publish