# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-04-00101-CR

Earl Douglas Kennedy, Jr., Appellant

v.

The State of Texas, Appellee

FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
NO. 03-1352-2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING

## M E M O R A N D U M  O P I N I O N

Appellant Earl Douglas Kennedy, Jr. was charged with possession of two ounces or less of marihuana. Tex. Health & Safety Code Ann. § 481.121 (West 2003). He pleaded not guilty and waived his right to a jury trial. The trial judge convicted him and sentenced him to 100 days in jail probated for twelve months, and a $2,000 fine, $1,600 of which was probated.

On appeal, Kennedy asserts three points of error. First, Kennedy argues that the search of the vehicle in which he was a passenger was illegally expanded in violation of the Fourth Amendment of the Constitution, and the evidence gathered as a result of the search should have been suppressed. Second, Kennedy asserts that the evidence is factually and legally insufficient to affirmatively link him to the marihuana found by police. And third, Kennedy argues that the seized contraband was improperly stored and handled prior to testing, thus depriving the results of any

probative value. For the reasons stated below, we overrule each of Kennedy's points of error and affirm the conviction.

## BACKGROUND

At about 1:40 a.m., Kennedy was riding in the front passenger seat of a car driven by his friend, Roderick Johnson, when Round Rock police officer Martin Flores made a routine traffic stop of the car for a non-functioning license plate light. *See* Tex. Transp. Code Ann. § 547.322(f) (West 2003). Officer Flores testified that, upon approaching the car and making contact with Johnson, he noticed that Johnson was extremely nervous, as evidenced by the fact that he was "constantly looking back and forth" when Flores asked him questions. Because Johnson did not have his driver's license with him, Flores went back to his patrol car and contacted police dispatch to verify Johnson's identity and to find out whether he had a valid driver's license or any outstanding warrants. As Flores was waiting for dispatch to reply, he observed Kennedy making "furtive movements," "bending over reaching for something under his seat or attempting to conceal something." Flores testified that, as a result of seeing these movements, he became more alert because he did not know whether Kennedy was reaching for a weapon or trying to conceal something. He testified that Kennedy's movements are what police officers are trained to watch for during traffic stops to protect their own safety. Kennedy testified that what Flores saw was Kennedy putting on his shoe; he earlier had removed his shoe for the comfort of his recently sprained ankle.

After additional officers, including Officer Justin Carmichael, arrived at the scene, Flores approached the vehicle again and asked Johnson to exit the car. Flores questioned Johnson and asked for and received Johnson's consent to search his vehicle. Flores testified that Johnson

2

remained nervous throughout the conversation. Flores then approached Kennedy for the first time and requested that Kennedy exit the vehicle. After Kennedy got out of the car, Flores questioned him about his relationship with Johnson. Flores testified that his suspicion was further raised by discrepancies in the answers given by Johnson and Kennedy to Flores's questions.[1] Flores testified that neither Kennedy nor Johnson were free to go at that time.

As Flores began to search the vehicle, Officer Carmichael alerted Flores that he had found a cigarette on the ground near Kennedy, which Flores identified as a marihuana "blunt."[2] Flores questioned Johnson and Kennedy as to who the cigarette belonged to, and both denied possessing it. However, after Flores told them that he would go back to his police car and review the onboard camera to see who had dropped it, Kennedy admitted that the cigarette was his. At trial, however, Kennedy testified that the cigarette did not belong to him, but that it may have fallen out of a jacket he was wearing at the time that did not belong to him, which he had taken from the trunk of Johnson's car.[3] Flores then placed Kennedy under arrest. Flores testified that approximately fifteen minutes elapsed between the time he stopped the car and Kennedy's arrest.

---

[1] Johnson told Flores that he had known Kennedy for approximately four months and that he was currently employed by the same company as Kennedy, but that he did not know Kennedy's last name. Kennedy told Flores, on the other hand, that Kennedy had known Johnson since high school, and that he had worked with Johnson a long time ago.

[2] According to Flores's testimony a "blunt" is the street name for a marihuana cigarette. We will refer to the evidence as a cigarette.

[3] Kennedy testified that he admitted to Flores that it was his cigarette because Flores was getting angry, and he thought that if he admitted it was his, Flores would just "say okay or whatever," because the cigarette was so small. He also testified that he was afraid that if the onboard camera showed that the cigarette had fallen out of the jacket he was wearing, he might have been "convicted of lying to a police officer."

3

Shortly after Kennedy was arrested, a canine unit arrived, and the narcotics dog made a positive alert in at least two different places inside the vehicle. One of these places was underneath the passenger seat where Kennedy had been sitting. Officer Carmichael then found a plastic bag wedged under the passenger seat and handed it to Flores, who took custody of the bag and identified the contents to be marihuana. The bag of marihuana and the marihuana cigarette were placed into a single evidence bag. Following the search, Johnson was issued a traffic citation and released. Kennedy was charged with possession of two ounces or less of marihuana.

Kennedy filed a motion to suppress all of the tangible evidence gathered at the scene of the traffic stop, and a hearing was conducted pursuant to the motion. The judge denied the motion to suppress, and following a trial, found Kennedy guilty of possession of marihuana.

## DISCUSSION

**The Motion to Suppress**

In his first point of error, Kennedy argues that his motion to suppress the evidence should have been granted because Flores illegally expanded the search of the vehicle in violation of his Fourth Amendment right against unreasonable searches and seizures. Kennedy does not challenge the initial stop of the vehicle but, rather, argues that the purpose of the stop (warning about the defective license plate light) had been effectuated prior to Flores's obtaining any specific or articulable facts on which to base the continued detention of the vehicle and its occupants, and that in fact Flores never had anything that amounted to more than Johnson's nervousness and a "hunch." He also argues that Flores improperly used the initial stop as a tool to engage in a "fishing expedition" which led to the discovery of the marihuana.

4

When reviewing a trial court's decision on a motion to suppress, we give almost complete deference to the trial court's determination of historical facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Simpson v. State*, 29 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). Where, as here, the trial court did not make explicit findings of historical fact, we review the evidence in the light most favorable to the court's ruling and assume that the court made implicit findings of fact supported in the record that support its conclusion. We review *de novo* the court's application of the law on the relevant Fourth Amendment standards. *Carmouche*, 10 S.W.3d at 327–28.

At the outset, we must consider an issue not raised by either party during the trial or on appeal: whether Kennedy's claim is based on a violation of his own Fourth Amendment rights, or instead, whether Kennedy "seeks to vicariously assert the rights of" Johnson, the driver of the vehicle. *Lewis v. State*, 664 S.W.2d 345, 347 (Tex. Crim. App. 1984); *see Kothe v. State*, 152 S.W.3d 54, 60 (Tex. Crim. App. 2004) (court may raise standing on own).

An essential element of Fourth Amendment claims is proof of a reasonable expectation of privacy. *Kothe*, 152 S.W.3d at 59. Thus, "[a]ny defendant seeking to suppress evidence obtained in violation of the Fourth Amendment must first show that he personally had a reasonable expectation of privacy that the government invaded." *Id*. Significant to the present case, "a passenger in a vehicle does not have a legitimate expectation of privacy" in the vehicle "where the passenger fails to assert a possessory interest in the vehicle or the property seized." *Meeks v. State*, 692 S.W.2d 504, 510 (Tex. Crim. App. 1985).

5

This does not mean, however, that such a passenger automatically lacks standing to challenge a vehicle's search under any circumstances; a passenger can challenge a vehicle's search "if the search resulted from an infringement (such as an illegal detention) of the *passenger's* Fourth Amendment rights." *Lewis*, 664 S.W.2d at 347–48. In *Lewis*, the police officer conducting the search requested that the appellant, a passenger of the vehicle, leave the vehicle and the officer detained her while the search was conducted. *Id*. at 347. At trial, the appellant asserted a Fourth Amendment claim, challenging both her removal from the vehicle and her continued detention after a certain point in time. *Id*. at 348. The Court of Criminal Appeals stated that the "relevant question" as to whether the appellant had standing to assert a Fourth Amendment claim is whether the search of the vehicle "was come at by exploitation of *appellant's* continued detention and removal from the vehicle." *Id*. The court found that the detention of the appellant was "irrelevant to the officer's decision to search. Put another way, [the officer] could have let appellant leave without hampering his ability to search the car. Thus, in no way was *her* detention necessary to perform the search." *Id*. at 349. The court concluded that the allegedly illegal search was not directly caused by exploiting appellant's continued detention, and thus held that the appellant did not have standing to make a Fourth Amendment claim of an unreasonable search of the vehicle. *Id*.

In the present case, because he did not have any possessory interest in the vehicle, Kennedy's standing to assert a Fourth Amendment claim is dependent upon the police illegally detaining him; the detention of Johnson and the vehicle is not relevant. *Id*. at 348. Similar to the *Lewis* court, we find that the search of Johnson's vehicle was not directly caused by exploiting Kennedy's continued detention. Kennedy was merely a passenger of the vehicle, and had he been

6

allowed to leave, Flores's ability to search Johnson's vehicle would not have been affected. We thus conclude that Kennedy did not have standing to make a Fourth Amendment claim as to the search of the vehicle, and that he therefore does not have standing to contest the admission of the plastic bag of marihuana.

However, Kennedy does have standing to challenge the admission of the marihuana cigarette. Although the marihuana cigarette was discovered in plain view on the ground outside of the car, the cigarette was not found in the search of the car. The only evidence is that it fell out of Kennedy's jacket when he exited the car while he was detained. Kennedy does have standing to challenge the admission of any evidence discovered pursuant to his own detention. *See id*.

Even assuming that Kennedy had standing to assert a Fourth Amendment claim for all aspects of his motion to suppress, the trial court did not err when it denied the motion, because the search conducted by Flores was reasonable under the Fourth Amendment. A routine traffic stop is a detention, and thus must be reasonable under the Fourth Amendment of the Constitution. *See Simpson*, 29 S.W.3d at 327. To be reasonable, the traffic stop must be temporary and last no longer than is necessary to effectuate the purpose of the stop. *Davis v. State*, 947 S.W.2d 240, 245 (Tex. Crim. App. 1997). During a routine traffic stop, an officer may demand identification, a valid driver's license, and proof of insurance from the driver, and also may check for outstanding warrants. *Id.* at 245 n.6. Once the purpose of the stop has been satisfied, the stop must not be used as a fishing expedition for unrelated criminal activity. *Simpson*, 29 S.W.3d at 327 (citing *Ohio v. Robinette*, 519 U.S. 33, 40–41 (1996) (Ginsburg, J., concurring)). Rather, any further detention must be based on articulable facts. *Id.* "In other words, once the purpose of the original detention has been

7

effectuated, any continued detention must be supported by some additional reasonable suspicion, that is, something out of the ordinary that is occurring and some indication that the unusual circumstance is related to crime." *Id.*

To establish reasonable suspicion, an officer must be able to articulate "something more than an 'inchoate and unparticularized suspicion or "hunch."'" *U.S. v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). The determination must be based on common-sense judgments and rational inferences about human behavior. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000); *Young v. State*, 133 S.W.3d 839, 841 (Tex. App.—El Paso 2004, no pet.). Police officers may rely on their own experience and training when making this determination. *Young*, 133 S.W.3d at 841. Texas courts have found that nervousness, abrupt and unsure answers to officer's questions, and conflicting and contradictory statements made by the driver and passenger can create a reasonable suspicion sufficient to justify further detention.[4] In addition, "[f]urtive movement during a police stop has been found to be a factor giving rise to reasonable suspicion."

---

[4] *See Simpson v. State*, 29 S.W.3d 324, 329 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (immediate exit of car upon being stopped, abrupt and unsure answers to officer's questions, nervousness, and misstatement of criminal history sufficient to give rise to reasonable suspicion); *Martinez v. State*, 29 S.W.3d 609, 612 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (officer had reasonable suspicion to detain vehicle where driver did not know name of his passenger and answers given by driver and passenger to officer about purpose for travel, final destination, and length of trip conflicted); *Zervos v. State*, 15 S.W.3d 146, 152–53 (Tex. App.—Texarkana 2000, pet. ref'd) (nervous behavior, refusal to look at officer when speaking to him, and contradictory statements were sufficient articulable facts to justify detention of the vehicle); *Ortiz v. State*, 930 S.W.2d 849, 856 (Tex. App.—Tyler 1996, no pet.) (reasonable suspicion satisfied when defendant did not make eye contact with officers, took a long time to answer questions, was generally nervous, and gave vague answers about type of work he did).

*LeBlanc v. State*, 138 S.W.3d 603, 608 n.5 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Zone v. State*, 84 S.W.3d 733, 738–39 (Tex. App.—Houston [1st Dist.] 2002), *aff'd*, 118 S.W.3d 776 (Tex. Crim. App. 2003) (defendant being handed something and quickly walking away after police arrived constituted furtive movement giving rise to reasonable suspicion).

In the present case, Officer Flores testified that he based his suspicion of possible criminal activity on (1) Johnson's nervousness, (2) Kennedy's furtive movements, and (3) the conflicting statements made by Johnson and Kennedy. Although each of these observations alone might not have given Flores reasonable suspicion that Kennedy was engaged in criminal activity, we hold that, taken together, they provided Flores with reasonable suspicion to continue to detain the vehicle and its occupants. We disagree with Kennedy that the purpose of the stop had been effectuated prior to Flores's observations giving rise to his reasonable suspicion. Johnson's nervousness was apparent upon Flores's first contact with Johnson, and Kennedy's furtive movements were seen as Flores waited for the dispatch operator to verify Johnson's identity, a routine procedure. While Kennedy argues on appeal that the officer had given a verbal warning for the defective taillight, the record does not reflect that a verbal warning was given, at least not prior to the circumstances that gave rise to Flores's reasonable suspicion.[5] For these reasons, we also disagree with Kennedy's contention that Flores was using the stop as a tool to engage in an improper "fishing expedition" for unrelated criminal activity.

---

[5] The record suggests that, after Kennedy was arrested and the search had concluded, Flores cited Johnson for "failure to maintain financial responsibility" and failure to carry a valid driver's license.

9

Significantly, even if Flores did not have probable cause to search the vehicle, Johnson, the owner of the vehicle, freely and voluntarily gave his consent to the search. *See Simpson*, 29 S.W.3d at 328. In *Ohio v. Robinette*, 519 U.S. 33 (1996), the Supreme Court held that a continued detention and request to search the vehicle following a routine traffic stop was reasonable where consent was given by the driver, even though no circumstances were noted that would have established reasonable suspicion of criminal activity. *Id.* at 39. Kennedy does not challenge the voluntariness of Johnson's consent, and there is no evidence in the record to suggest that the consent was other than voluntary. *See Williams v. State*, 621 S.W.2d 609, 613 (Tex. Crim. App. 1981).[6] We thus conclude that even if the detention of the vehicle was not based on articulable facts giving rise to a reasonable suspicion of criminal activity, Johnson's consent constituted sufficient justification to continue the detention and perform the search.

The refusal to suppress the marihuana cigarette is similarly justified. The cigarette was discovered in plain view on the ground after it fell out of the jacket Kennedy was wearing. The only basis for the suppression of the cigarette would be if it came to rest on the ground pursuant to an illegal detention of Kennedy. As we have discussed, the detention of Johnson and the car was reasonable, and Johnson consented to the search of the car. Moreover, Flores acted properly when he ordered Kennedy to exit the car. *See Josey v. State*, 981 S.W.2d 831, 840 (Tex. App.—Houston

---

[6] Kennedy's consent to search the vehicle was not required because the "permission to search was obtained from a third party who possessed authority over . . . the premises or effects sought to be inspected." *See Williams v. State*, 621 S.W.2d 609, 613 (Tex. Crim. App. 1981).

[14th Dist.] 1998, pet. ref'd) ("Because an officer's safety may be threatened by a passenger's access to weapons in an automobile, an officer may, as a matter of course, order a passenger in a lawfully stopped vehicle to exit the vehicle pending completion of the stop."). Because the cigarette was not discovered pursuant to an illegal detention or search, the trial court did not abuse its discretion by refusing to suppress the cigarette. We overrule Kennedy's first point of error.

**Sufficiency of the Evidence**

In Kennedy's second point of error, he argues that the evidence was legally and factually insufficient to affirmatively link him to the marihuana cigarette and the bag of marihuana found under the seat.

When a defendant makes a challenge to the sufficiency of the evidence to sustain a criminal conviction, the question presented is whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 324 (1979) (legal sufficiency); *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004) (factual sufficiency). In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict; we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981) (citing *Jackson*, 443 U.S. at 318–19). In reviewing factual sufficiency, we perform a neutral review of the evidence and set aside the verdict "only if the evidence supporting the verdict is so weak as to render the verdict clearly wrong and manifestly unjust." *Zuniga*, 144 S.W.3d at 481. A verdict is clearly wrong and manifestly unjust when it "shocks the conscience" or "clearly demonstrates bias." *See id*.

11

To prove unlawful possession of a controlled substance, the State must prove that Kennedy exercised care, custody, control, or management over the substance, and that he knew the substance was contraband. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). Because Kennedy was not in exclusive control or possession of the place where the marihuana was found, "the State must present facts and circumstances that *affirmatively link* the accused to the contraband in such a manner that it can be concluded that he had knowledge of the contraband, as well as control over it." *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd) (emphasis added). The evidence may be either direct or circumstantial. *Id.* at 240.

In *Hall v. State*, we listed several factors that tend to establish an affirmative link, including: (1) whether the contraband was in plain view; (2) whether the accused was the owner or driver of the car in which the contraband was found; (3) whether the contraband was conveniently accessible to the accused; (4) whether the strong odor of marihuana was present; (5) whether paraphernalia for using the contraband was found on or in view of the accused; (6) whether the physical condition of the accused indicated recent consumption of the contraband found in the vehicle; (7) whether traces of the contraband were found on the accused; (8) whether conduct by the accused indicated consciousness of guilt; (9) whether the accused had a special connection to the contraband; (10) whether affirmative statements connect the accused to the contraband; (11) whether the accused's fingerprints were on the contraband's container; and (12) whether the accused attempted to flee. *Id.* at 240–41. Rarely does any single factor contain logical force "sufficient to sustain a conviction based on constructive possession"; however, "'the number of factors present is less important than the logical force of those factors, alone or in combination, in establishing the

12

elements of the offense.'" *Id.* (quoting *Martinets v. State*, 884 S.W.2d 185, 188 (Tex. App.—Austin 1994, no pet.)).

With respect to the marihuana cigarette found on the ground, we note Kennedy's close proximity to the cigarette—he was standing two or three feet away. Moreover, Kennedy's extrajudicial confession that the marihuana cigarette was his constituted an affirmative statement connecting him to the contraband. *See Rocha v. State*, 16 S.W.3d 1, 4 (Tex. Crim. App. 2000). Of course, an extrajudicial confession, standing alone, is not sufficient to support a conviction; there must be independent evidence that the crime actually occurred. *Id.* Once the corroboration requirement is satisfied, however, "a confession to the crime is, by itself, sufficient evidence to support a conviction." *Lane v. State*, 933 S.W.2d 504, 507 (Tex. Crim. App. 1996). In this case, Kennedy's confession that the marihuana cigarette belonged to him was corroborated by the independent evidence of the cigarette's proximity to him.

As to the plastic bag of marihuana, we also conclude that the evidence affirmatively linked Kennedy to the bag. Flores testified that he saw Kennedy making "furtive gestures"; specifically, reaching down under his seat. We further note that the bag was found within Kennedy's reach in an enclosed space, accessible to him. Although Kennedy gave an alternative explanation for his "furtive movement" (that he was putting on his shoe) and attempted to justify his confession that the cigarette was his (that he was trying to calm the police officer), his testimony at most presented a choice for the fact-finder.

We hold that, based upon the combined force of this evidence, a rational trier of fact could find all the essential elements of the charged offense beyond a reasonable doubt. Considering

13

all the evidence in the light most favorable to the verdict, the evidence is legally sufficient to support the judgment. We further hold that when all the evidence is considered in a neutral light, the finding of guilt beyond a reasonable doubt was not clearly wrong or manifestly unjust, and thus is factually sufficient. Despite Kennedy's testimony at trial, we cannot conclude that the verdict shocks the conscience or clearly demonstrates bias. We overrule Kennedy's second point of error.

**Improper Storage of Contraband**

Finally, Kennedy asserts in his third point of error that the cigarette and the bag of marihuana were improperly stored and handled prior to testing, thus depriving the results of any probative value. Kennedy argues that because the results were "valueless and the prejudice against the defendant" was of "such great weight," the cigarette and plastic bag should have been inadmissible.

In making his argument, Kennedy points to the testimony offered at trial by the expert who tested the marihuana, who stated that the cigarette and the plastic bag of marihuana were stored in the same evidence container for nearly ten months and were weighed and tested together. The expert also testified that if two items are separate pieces of evidence, they should normally be packaged in separate containers. Kennedy objected to the admission of the cigarette and the plastic bag, based on the improper storage and testing of the evidence, in the following manner:

> Your Honor, at this time we would object to the admission of this evidence, the . . . small cigar part and the actual leafy substance were put in the bag together. I believe it is possible that it crossed contamination [sic] of these things, they've been stored in that . . . bag for a long time, they're together, they weren't analyzed separately.

14

The court overruled the motion and the evidence was admitted.

The State responds that Kennedy's objection at trial did not state a legal basis, and thus was not properly preserved for our review. The State also argues that, although Kennedy objected to the admission of the cigarette and plastic bag, he failed to object to the admission of the lab report offered by the State through its expert witness, and thus did not preserve any error as to the admission of the expert witness's findings.

Under Texas law, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403. A trial judge has broad discretion in ruling on an objection to the admission of evidence based on prejudice, and a reviewing court will reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990).

To preserve error regarding the admission of evidence, a defendant must make a timely and specific objection that states the specific legal grounds for the ruling desired, unless the grounds are apparent from the context of the objection. Tex. R. App. P. 33.1(a); *Martinez v. State*, 22 S.W.3d 504, 507 (Tex. Crim. App. 2000); *Turner v. State*, 719 S.W.2d 190, 194 (Tex. Crim. App. 1986). "The purpose of requiring the objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." *Martinez*, 22 S.W.3d at 507.

After reviewing the record, we agree with the State that Kennedy's complaint was not preserved for our review. Kennedy's objection was vague and indefinite and does not state any legal grounds on which the objection is based. Indeed, as the State argues, the objection does nothing more than comment on the weight of the evidence presented. In addition, because it appears clear

15

from the record that the objection was in reference to the admission of the cigarette and the plastic bag, and not the drug lab's test results, to the extent that Kennedy argues the objection was about the test results, we overrule this objection as it was not properly preserved. *Boyd v. State*, 811 S.W.2d 105, 113 (Tex. Crim. App. 1991) (failure to object waives review of issues on appeal).

We further note that, even if the cigarette and plastic bag were improperly stored together in the same evidence bag for nearly ten months, because we have found affirmative links between Kennedy and both the cigarette and the plastic bag, it is not critical to Kennedy's conviction or punishment whether the test results were based on marihuana found in the cigarette or the bag. Because the cigarette and the contents of the bag weighed only .16 ounces combined, the offense charged was possession of two ounces or less of marihuana; that offense is a Class B misdemeanor, the lowest class for possession of marihuana. *See* Tex. Health & Safety Code Ann. § 481.121(b). The test showing the presence of marihuana in the evidence bag proves that at least one of the two items—the cigarette or the original plastic bag—contained marihuana. Because their combined weight is two ounces or less, the aggregation of the two items did not increase the offense level or the punishment range. Sufficient evidence affirmatively links Kennedy to possession of both items, and thus the evidence is sufficient to convict him of possession of two ounces or less of marihuana regardless of whether one of the items did not originally contain marihuana. Even if Kennedy preserved this error, and even if the court erred by failing to exclude one of the items, the error did not contribute to Kennedy's conviction or punishment or affect his substantial rights. It is therefore harmless. Tex. R. App. P. 44.2. We overrule Kennedy's third issue on appeal.

16

## CONCLUSION

We conclude that the trial judge did not err in denying Kennedy's motion to suppress the evidence. We further conclude that the evidence was both legally and factually sufficient to justify the conviction. Finally, we hold that Kennedy's objection to the evidence based on prejudice was not preserved for our review, and in any event, the alleged improper storage of the evidence was harmless. Because we have overruled Kennedy's three issues on appeal, we affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed: May 5, 2005

Do Not Publish