

**NUMBER 13-12-00429-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**STATE OF TEXAS,**                                    **Appellant,**

**v.**

**DARELL LAWON WALKER,**                          **Appellee.**

---

### On appeal from the 377th District Court
### of Victoria County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Longoria
Memorandum Opinion by Justice Longoria**

This is an interlocutory appeal by the State of the trial court's order suppressing drug evidence seized as a result of a traffic stop of appellee, Darrell Lawon Walker. The state challenges the trial court's ruling that appellee did not consent to a search of his vehicle and that all evidence obtained as a result of that search should be excluded. We affirm.

# I. BACKGROUND

This case arises out of nighttime surveillance by the Victoria, Texas Police Department of a house suspected to be a center of drug sales. Officer Jason Stover observed a car leave the house and followed it in his police cruiser. After observing the car commit several traffic violations, Stover activated his lights and pulled the car over. Stover informed the driver, appellee, of the traffic violations and ran a check of his driver's license. Stover discovered appellee's license had expired and that he had a criminal record for drug offenses. After Stover discovered that appellee's license was expired, he and appellee had the following exchange while appellee remained seated in the driver's seat: [1]

> Stover:      You don't have any drugs or weapons on you tonight, do you?
> Defendant:   Nuh-uh.
> Stover:      Okay. You mind if I take a look?
> Defendant:   Yeah.
> [Defendant exits the vehicle.]
> Stover:      You mind if I check to make sure you ain't got no weapons on you?
> Defendant:   Yeah.

The video shows that appellee turned around and rested his arms on the vehicle while Stover performed a pat down search of his outer clothing. Stover instructed appellee to stand by Stover's police cruiser while Stover, with the assistance of other backup officers, searched the vehicle. The officers uncovered a marijuana cigarette during the search of the vehicle. Stover also brought a drug-sniffing dog inside the vehicle, and it alerted Stover to the driver's seat. Stover testified that, based on his experience, the dog's reaction to that area was a good indication that the driver had drugs in his groin area. Stover subsequently placed appellee under arrest for

---

[1] The trial court viewed the dashboard videotape from Officer Stover's vehicle and reproduced this exchange in its findings of fact and conclusions of law. We viewed the tape and, having found it to be accurate, reproduce it here.

possession of marijuana, and another officer transported him to the county jail. Before leaving the scene, Stover can be heard on the dashcam footage telling the officers transporting appellee to ensure that appellee is strip-searched upon arrival. During the subsequent strip search, jail officials discovered cocaine taped under the appellee's scrotum. The State subsequently charged appellee with possession of a controlled substance, a second-degree felony, and transporting a prohibited substance into a correctional center, a third-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010); TEX. PENAL CODE ANN. § 38.11(d)(1) (West 2011). Appellee moved at trial to suppress the search of the car and the evidence found in the strip search as "fruit of the poisonous tree." The trial court granted the motion, and the State filed a timely notice of appeal. TEX. CODE CRIM. PRO. art. 44.01(a)(5).

At the State's request, the trial court subsequently issued accompanying findings of fact and conclusions of law, in which it found: (1) Stover had reasonable suspicion to temporarily detain appellee because Stover observed appellee commit traffic violations in Stover's presence; (2) appellee consented to the pat down; (3) appellee was not under arrest during the vehicle search; (4) Officer Stover searched the vehicle without appellee's consent; (5) Officer Stover did not have probable cause to search the vehicle; (6) there was a direct causal connection between the search of appellee's vehicle and the jail strip search; and (7) there was no attenuation of taint in the cocaine because of the temporal proximity of the strip search to the illegal search and the lack of intervening circumstances. Based on the foregoing, the trial court concluded that both the marijuana and cocaine should be suppressed as obtained in violation of appellant's state and federal constitutional rights against unreasonable search and seizure.

3

In what we number as three issues, the State challenges the trial court's finding that appellee did not give Stover consent to search the vehicle. The State does not challenge the trial court's finding that Officer Stover did not have probable cause to search the vehicle, or that appellee was not under arrest at the time of the search. The State argues, in the alternative, that even if the vehicle search was not a "valid consent based search" the cocaine discovered during the strip search at the jail should not be suppressed because there was no causal connection between the arrest and the search at the jail. The State also argues that even if there was a causal connection between the two searches, the time between the arrest and the strip search attenuated any taint of illegality.

## II. ANALYSIS

### A. Legality of the Vehicle Search

The State argues that the trial court erred in excluding the marijuana cigarette because Officer Stover had appellee's consent to search the vehicle. The State does not challenge the trial court's finding that Officer Stover did not have probable cause to search the vehicle, or that appellee was not under arrest at the time of the search.

### 1. Standard of Review

We review a trial court's ruling on a motion to suppress for abuse of discretion, overturning only when the trial court's ruling is outside of the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We give "almost total deference to a trial court's determination of the historic facts and mixed questions of law and fact that rely upon the credibility of a witness" but we review de novo "pure questions of law and mixed questions that do not depend on credibility determinations." *Id.* (citing *Guzman v. State*, 955 S.W.2d 85, 87–89 (Tex. Crim. App.

4

1997)). We review de novo a trial court's application of search and seizure law to the facts. *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011). We will sustain a ruling that is "reasonably supported by the record and is correct on any theory of law applicable to the case." *Id.* (internal quotation marks omitted).

### 2. Applicable Law

Consent to search operates as an exception to the state and federal constitutional requirements of a warrant and probable cause. *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). Consent to search renders even a warrantless search "reasonable" under the Fourth Amendment because "it is no doubt reasonable for the police to conduct a search once they have been permitted to do so." *Weaver*, 349 S.W.3d at 525 (citing *Florida v. Jimeno*, 500 U.S. 248, 250–251 (1991)). Consent must be "positive," but it may "be given orally or by action, or it may be shown by circumstantial evidence." *Id.* at 526. It is the State's burden to prove voluntary consent by clear and convincing evidence. *Id.* (citing *State v. Valtierra*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010)). When the defendant challenges the scope of the consent given, the standard is objective reasonableness. *Id.* (citing *Jimeno*, 500 U.S. at 251). We consider the totality of the circumstances, "and viewing them in the light most favorable to the trial judge's ultimate ruling, the legal question is, what would 'the typical reasonable person have understood by the exchange between the officer and the suspect?'" *Valtierra*, 310 S.W.3d at 451 (citing *Jimeno*, 500 U.S. at 251); *see Simpson v. State*, 29 S.W.3d 324, 330 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). We consider all the circumstances of the interaction but "without regard for the subjective thoughts or intents of either the officer or the citizen." *Weaver*, 349 S.W.3d at 525–26.

### 3. Discussion

The State contends that when Officer Stover asked appellee whether he had any drugs or weapons "on you," appellee would have reasonably understood that Stover was asking for consent to search both his person as well as the vehicle because (1) appellee was still in the driver's seat at the time, and (2) the societal understanding of asking whether someone has an item "on you" is that the questioner is referring to all objects within a person's control and not just those on a person's body. Whether or not those statements are true, we do not look to the subjective thoughts of the officers but to what a reasonable person would have concluded from the totality of the circumstances of the exchange between them. *Id.*

The video of the exchange in this case shows that appellee exited the car in response to Stover's request to search. Appellee immediately turned around and extended his arms in front of him so that Stover could perform the pat down. At Stover's direction, appellee then waited by the police car while Stover and others searched his vehicle until they placed him under arrest. Considering the totality of the circumstances and viewing them in the light most favorable to the trial court's ruling as we must, we agree with the trial court that a reasonable person would not have concluded that appellee gave police consent to search his vehicle. Appellee's actions of getting out of the car and immediately extending his arms are consistent with someone who has given consent to a pat down search. The State argues that appellee's silence during the search of his car indicates that he understood his original consent as encompassing his vehicle. Although silence in the face of searches beyond the original scope of consent can sometimes indicate the subject's further consent, in these circumstances, we conclude that silence alone did not prove that appellee

6

consented to more than a pat down search. We see nothing else in the video from which a reasonable person could derive an objectively reasonable belief that appellee granted additional consent. We hold that the State failed to meet its burden of showing the existence of consent to search the vehicle by clear and convincing evidence; the trial court thus did not abuse its discretion in supressing the marijuana cigarette found during the search. The State's first issue is accordingly overruled.

## B. Suppression of Cocaine Found at the Jail

The trial court also granted appellee's motion to suppress the cocaine found during a strip search at the jail following his arrest. In its second and third issues, the State argues that there is no causal connection between the vehicle search and the strip search of appellee. The State further argues that even if a connection existed, any taint of illegality had been sufficiently attenuated by the passage of time between the two searches.

### 1. Applicable Law

Evidence that is the indirect product of an illegal search and seizure is generally inadmissible against the person searched as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471 (1963); *State v. Iduarte*, 268 S.W.3d 544, 550 (Tex. Crim. App. 2008). We do not exclude all evidence that would not have been discovered "but for" the illegality but inquire whether the particular evidence that is objected to "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 488; *Iduarte*, 268 S.W.3d at 550–551. We apply three factors in determining whether the taint of the original illegal detention has been sufficiently purged so that the evidence is admissible: (1) temporal proximity to the illegal detention; (2) any intervening circumstances; and (3) "purposefulness or flagrancy of the police misconduct." *State v. Mazuca*, 375 S.W.3d

7

294, 303–04 (Tex. Crim. App. 2012). In the context of the seizure of physical evidence after an illegal roadside or pedestrian stop, the court of criminal appeals has ruled that temporal proximity to the illegal conduct is the most important factor so long as police do not discover the intervening circumstance of an outstanding warrant for the person illegally stopped. *Id.* at 306–07. The intervening circumstance of an outstanding warrant discovered after the stop, but before discovery of physical evidence, does not categorically remove the taint, but reduces the importance of the time factor and makes the third factor—the flagrancy and purposefulness of police conduct—the most important in the analysis. *Id.* Where there is no outstanding warrant, however, and physical evidence is seized "shortly after" an illegal stop, that evidence "should ordinarily be suppressed, even if the police misconduct is not highly purposeful or flagrantly abusive of Fourth Amendment rights." *Id.* at 306. [2]

### 2. Discussion

The State argues that the act of placing appellee into custody at the county jail constitutes an intervening event that was essentially equivalent to the discovery of an outstanding warrant. Specifically, the State argues that the jail does not strip-search new inmates to gather evidence for prosecution but to prevent the importation of contraband such as drugs into the jail population. The State calls our attention to a recent decision of the United States Supreme Court where the Court specifically approved a jail policy of strip searches for all new inmates regardless of the severity of the crime for which they are jailed. *See generally Florence v. Board of Chosen*

---

[2] The State also argues that we should apply a "butfor" causation test to the issue of the admissibility of the cocaine. However, the cases cited by the State to support applying a "butfor" causation test to the admissibility of indirectly-obtained evidence refer to a rule announced by the court of criminal appeals that requires such an analysis before excluding statements obtained in violation of a specific section of the family code. *See Roquemore v. State*, 60 S.W.3d 862, 870–71 (Tex. Crim. App. 2001); *Pham v. State*, 175 S.W.3d 767, 772–73 (Tex. Crim. App. 2005). We see nothing in either case that supports extending the causation analysis beyond that specific context.

*Freeholders of County of Burlington*, 132 S.Ct. 1510 (2012). The crux of the State's contentions is that the search for contraband, separated in time from the arrest and motivated by non-investigatory reasons, attenuated the taint of illegality enough to render the cocaine admissible. We disagree.

The State provides no authority for the proposition that a strip search on admittance to jail is an intervening circumstance. Although, according to the State, the jail does not strip-search inmates for the primary purpose of discovering and seizing evidence to be used at trial, an outstanding warrant is "intervening" because it provides independent legal justification for detaining the person even if the original search or stop was illegal. Even when an outstanding arrest warrant does exist, "the intervening circumstance is a necessary but never, by itself, wholly determinative factor in the attenuation calculation." *Mazuca*, 375 S.W.3d at 306. Placing a person in confinement after an illegal stop cannot serve the same purpose because there is no independent legal justification for placing the person in confinement in the first place. When there is no intervening circumstance, the court of criminal appeals is clear that "temporal proximity is the paramount factor" in the attenuation analysis. *Id.* The State argues here that the strip search was not in the immediate aftermath of the vehicle search because at least twenty-three minutes elapsed between the time police first asked appellee for consent to search and the time they departed the scene with appellee under arrest to transport him to the county jail. The court of criminal appeals has not announced a bright line rule for the amount of time that must pass before evidence is no longer discovered "immediately after" an illegal stop or search, but we conclude that the short amount of time between appellee's arrest and the strip search at the jail is fairly

9

within the meaning of that term.[3]  Because the evidence was discovered such a short time after the illegal search of appellee's car, and there is no intervening warrant to provide justification, we conclude that the taint of illegality has not been purged.[4] *Mazuca*, 375 S.W.3d at 307.  We hold that the trial court did not abuse its discretion in suppressing the cocaine as inadmissible.  The State's second and third issues are accordingly overruled.

### III. CONCLUSION

Having overruled the State's three issues, we affirm the suppression order of the trial court.

_____
NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
 21st day of March, 2013.

_____

[3] If the precise time of appellee's strip search on being admitted to the jail at night was recorded, it does not appear in the record.

[4] In what it calls its fourth issue, the State also argues that "the fact that Officer Stover stated at the suppression hearing that he arrested Appellee only for the marijuana offense should not be dispositive" on whether the arrest is valid.  We agree that it is Texas law that "[a]n otherwise valid search incident to arrest will be upheld as long as there was probable cause to arrest the defendant for some offense, even if it was not the actual reason the officer arrested the defendant."  *State v. Morales*, 322 S.W.3d 297, 300 (Tex. App.—Dallas, no pet.)(op. on reh'g).  We are unable to reach this issue because the State does not challenge on appeal the trial court's findings that appellant was not under arrest at the time of the search but instead argues, without authority, that the existence of objective probable cause to arrest appellee for the traffic violations preserves the admissibility of the cocaine found in the jail strip search.  *See* TEX. R. APP. P. 38.1(i).

10